UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Kamilla Sali-Suleyman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**   IN CHAMBERS — COURT ORDER

Before the Court are a Motion to Dismiss filed by defendant Polymer80, Inc. ("Defendant") (Docket No. 9) and a Motion to Remand filed by plaintiffs Claudia Apolinar ("Apolinar") and Emmanuel Perez Perez ("Perez") (collectively "Plaintiffs") (Docket No. 16). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for December 20, 2021, is vacated, and the matters taken off calendar.

Plaintiffs commenced this action in Los Angeles Superior Court on August 9, 2021, and served Defendant on August 12, 2021. Plaintiffs filed a First Amended Complaint ("1st AC") on August 21, 2021, and served it on Defendant on August 24, 2021. According to the Complaint, Defendant is a manufacturer of "ghost gun" kits that include some or all of the components necessary to build complete and fully functional frames and weapons that lack serial numbers used by law enforcement to trace firearms. Plaintiffs, members of the Los Angeles Sheriff's Department, were both shot by a weapon built from a kit manufactured by Defendant. The shooting occurred on September 12, 2020, while Plaintiffs were seated in their Sheriff's Department patrol car. Both the Complaint and 1st AC allege claims for negligence and public nuisance against Defendant.

Defendant filed its Notice of Removal on October 22, 2021, alleging that the Court possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). According to the Notice of Removal, Defendant removed the action within 30 days of its receipt of a September 27, 2021 email from Plaintiffs' counsel responding affirmatively to Defendant's counsel's inquiry if Plaintiffs' counsel believed that the amount in controversy exceeds $75,000.00. In their Motion to Remand, Plaintiffs assert that Defendants' filing of the Notice of Removal was untimely because it was facially apparent from the allegations contained in the original Complaint and 1st AC that Plaintiffs' claims each exceeded the jurisdictional minimum

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

for diversity jurisdiction and otherwise alleged sufficient facts to establish this Court's subject matter jurisdiction.[1]

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)).

In attempting to invoke this Court's diversity jurisdiction, Defendant must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

When determining the amount in controversy, the Court must assume that the allegations in the complaint are true and that a jury will return a verdict in the plaintiff's favor on all of the claims in the complaint. See Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." Korn v. Polo

---

[1] The 1st AC, like the original Complaint, alleges that both Plaintiffs are domiciled in California. (Compl. ¶ 30; 1st AC ¶ 31.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original); see also Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d at 566 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory minimum] when federal jurisdiction is challenged. . . . [A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). "Conclusory allegations as to the amount in controversy are insufficient." Matheson, 319 F.3d at 1090–91.

"The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); Parrino v. FHP, Inc., 146 F.3d 699, 703 (9th Cir. 1998).

In Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005), the Ninth Circuit clarified that if an initial pleading is not removable on its face, then the first 30-day period for removal is not triggered. "In such case, the notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." Id. (quoting 28 U.S.C. § 1446(b)(3)). As the Ninth Circuit has explained:

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

> Section 1446(b) "identifies two thirty-day periods for removing a case." "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained."

Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013) (quoting Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b))).

The Ninth Circuit does not "charge defendants with notice of removability until they've received a paper that gives them enough information to remove." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006). Therefore, in the Ninth Circuit, a defendant does not have a duty to investigate whether the matter is removable even where there may be a "clue" indicating that federal jurisdiction may exist. Harris, 425 F.3d at 696. Instead, the "notice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." Id. at 694. Because inquiries into the subjective knowledge of a defendant might result in a "mini-trial regarding who knew what and when," courts may only rely on the face of the initial pleading and the documents exchanged by the parties to determine when the defendant had notice of the grounds for removal. Harris, 425 F.3d at 695. This "bright-line approach" serves two purposes: (1) it "brings certainty and predictability to the process and avoids gamesmanship in pleading"; and (2) it "avoids the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." Id. at 697.

A party may have sufficient information to provide notice of removability even in the absence of receipt of a paper alleging a specific dollar amount of damages. See Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (affirming denial of remand motion where plaintiff never alleged in either her pleading or discovery responses "the amount of damages or [attorneys'] fees she sought" but interrogatory responses identifying the categories of damages sought by the plaintiff allowed the defendant to establish by a preponderance of the evidence that the amount in controversy exceeded the jurisdictional minimum); see also Kuxhausen, 707 F.3d at 1140 (explaining that "defendants need not make extrapolations or engage in guesswork; yet the statute 'requires a defendant to apply a reasonable amount of intelligence in ascertaining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

removability'") (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 206 (2d Cir. 2001)). "In cases involving severe injuries, especially those requiring surgery, courts have found it facially apparent from the complaint that the amount in controversy was satisfied." Hammarlund v. C.R. Bard, Inc., CV 15-5506 SVW (JEMx), 2015 WL 5826780, at *2 (C.D. Cal. Oct. 2, 2015); see also Fjelstad v. Vitamin Shoppe Indus. LLC, CV 20-7323 ODW (AFMx), 2021 WL 364638, at *4 (C.D. Cal. Feb. 3, 2021) (finding removal untimely where plaintiff's complaint "identifies the nature and severity of her alleged injuries, stating that she sustained third-degree burns to her breast, chest, and torso").

Here, the Complaint alleges considerable detail about the injuries suffered by Plaintiffs and the damages they seek:

> 34. . . . [T]he shooter shot Sheriff's Deputy Apolinar in the jaw—shattering it and slicing her tongue in half. For two months after the incident, her doctors prescribed her an all-liquid diet after they wired her jaw shut to heal. She continues to suffer from permanent tongue damage and weakness in her jaw. Her lower lip and chin remain numb because the nerve connecting to the lower part of her face was severed during the ambush.
> 35. Deputy Apolinar was also shot in both arms and suffered broken bones in each arm. She cannot carry a gallon of milk with her right arm.
> 36. Deputy Apolinar spent six days in the intensive care unit.
> 37. Deputy Apolinar thinks about the ambush every day. When she came home from the hospital, her young son recoiled in fear at the sight of her because of her injuries. They are still working to rebuild their relationship. Her injuries prevent her from doing many of the activities she enjoyed with her son before the ambush. She cannot even pick him up.
> 38. After the ambush, Sheriff's Deputy Perez learned that he had actually been shot a total of five times. He was shot in the head. He was also shot in the hand, resulting in a shattered bone. Another bullet entered his arm and shattered his humerus bone. Another bullet went through his shirt, skidded off his bulletproof vest, and disabled his handheld radio.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

39. Because of these injuries, Deputy Perez suffered a concussion and brain bleeding. He underwent surgery on his hand and elbow, including a bone graft from his hip. He required three plates surgically inserted onto his humerus bone, which was broken in three places. Additionally, he now has multiple plates and screws in his hand and arm to hold the shattered bones together, and he is informed that he requires additional surgery to restore function in his hand. He suffers from numbness in his right hand on his index finger and running to the top of his hand. He cannot lift more than ten pounds with his injured arm.

40. Deputy Perez struggles with sleep every night and is receiving mental health support for his trauma. He suffers from flashbacks. He had no previous mental health issues before the ambush. Before his injury he loved being around his family, but he now feels withdrawn and irritable for reasons he cannot explain. He increasingly avoids interactions with other people.

41. Neither Deputy Apolinar nor Deputy Perez has been cleared to return to duty.

(Compl. 9:6-10:11.) The Complaint alleges that Plaintiffs "sustained and will sustain physical pain, mental suffering, loss of enjoyment of life, anxiety, and emotional distress" as a result of Defendant's conduct and "have incurred and will continue to incur economic damages, including lost future income, lost earning capacity, and past and future medical expenses and related expenses." (Id. ¶¶ 99-100.) Plaintiffs' prayer for relief seeks "noneconomic damages according to proof at trial," "economic damages according to proof at trial," pre- and post-judgment interest, punitive and exemplary damages, and "attorneys' fees to the fullest extent permitted by law." (Id. 29:28-30:6.)

     Because the Complaint alleges in detail the grievous nature of Plaintiffs' injuries and identifies the categories of damages they seek to recover, the Court concludes that it was facially apparent from the Complaint itself that the amount in controversy exceeded the jurisdictional minimum for diversity jurisdiction. As a result, Defendant's filing of the Notice of Removal more than 30 days after Plaintiffs served Defendant with the Summons and Complaint was untimely under 28 U.S.C. § 1446(b).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8401 PA (PVCx) | Date | December 7, 2021 |
|---|---|---|---|
| Title | Claudia Apolinar, et al. v. Polymer80, Inc. | | |

    For all of the foregoing reasons, the Court grants Plaintiffs' Motion to Remand. This action is hereby remanded to Los Angeles Superior Court, Case Number 21STCV29196, as a result of the procedural defect. See 28 U.S.C. § 1447(c). The Court denies Defendant's Motion to Dismiss without prejudice to it being re-filed and re-noticed in Los Angeles Superior Court. The Scheduling Conference, previously calendared for December 20, 2021, is vacated.

    IT IS SO ORDERED.